CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 2 6 2005

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:05CR00001 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CHRISTOPHER JAY SPENCE, | ) | |
| | ) | |
| Defendant, | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a single count Indictment charging defendant with willfully and knowingly making a false statement in an application for passport with the intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws, in violation of 18 U.S.C. § 1542. On April 18, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that his full legal name is Christopher Jay Spence, that he has also been known as Shannon Rome Spence, that he was born on January 24, 1974, and that he completed high school. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further

-1-

testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no other physical or mental condition that would impair his ability to understand the nature of the proceedings being held, the nature of the charges against him or the consequences of pleading guilty to those charges. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence, except upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant at the time of his guilty plea, and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged is a felony and that, if his plea is accepted, he will be adjudged guilty of such offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100. The defendant further stated that he understood that he must submit to the

government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged is ten years in prison and a $250,000 fine, together with supervised release. The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant stated that he agreed that USSG § 2L2.2, with a base offense level of 8, is applicable to his criminal conduct, and that, because he fraudulently obtained or used a United States passport, USSG § 2L2.2(b)(3), which adds four (4) levels, is applicable to his conduct. The defendant further stated that he agreed that, pursuant to USSG § 3C1.1, two (2) levels should be added to his offense level for obstruction of justice. The defendant testified that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility. The defendant further stated that he understood that the government would recommend that his sentence of incarceration be fixed at the low end of the applicable sentencing guideline range, but that the court would not be bound by the government's recommendation. The defendant testified that he understood that the government will not object to a request by the defendant to serve any term of imprisonment at a community correctional facility, but that the ultimate decision in this regard will be made by the Bureau of Prisons. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;

8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also testified that he understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Count One of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and accepted said Summary in its entirety. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

On July 20, 2000, a subject who identified himself as Shannon Rome Spence applied for a United States passport at the City of Charlottesville, Virginia Post Office. As proof of identification, the subject presented a Virginia identification card, issued in the name of Shannon Rome Spence. The subject presented as proof of citizenship a birth certificate purportedly from North Carolina in the name of Shannon Rome Spence, born on 5-22-1972, and indicated on the application that his Social Security number is 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. The subject completed, signed, and swore to the veracity of all the statements made in the application in the presence of a Post Office employee, a person authorized by the Department of State to accept passport applications.

On January 22, 2002, the true Shannon Rome Spence appeared at the City of Charlottesville, Virginia Post Office to apply for a United States Passport. Shannon Rome Spence presented a State of

-5-

Case 3:05-cr-00001-NKM-BWC   Document 47   Filed 04/26/05   Page 5 of 8   Pageid#: 84

North Carolina Birth Certificate, issued on 1-11-2002, and, as proof of identity, he presented a Virginia driver's license. Shannon Rome Spence indicated on the application that his Social Security number is 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. Shannon Spence indicated that he had never been issued a U.S. Passport. Standard name checks and ultimately correspondence from the New Orleans Passport Agency revealed that a U.S. Passport, number 089015842, had been issued in the above identity on 9-8-2000. Subject Shannon Rome Spence was contacted regarding the discrepancy, and in subsequent correspondence, Spence indicated that while he had never applied for a passport, his brother, Christopher Spence, had received a Virginia identification in his, Shannon's, identity, and that he believe it was Christopher Spence who had applied for and received a passport in his identity and name. Shannon Spence indicated that his brother Christopher had stolen identity documents from him while fleeing prosecution and/or confinement at some point in the past.

In October of 2002, the State Department received verification from the U.S. Social Security Administration, Office of Inspector General, that Christopher Jay Spence's Social Security number is 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, and that Shannon Rome Spence's Social Security number is 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. In September of 2002, State Department agents learned that Christopher Spence had been arrested, and that at the time of the arrest, he was in possession of an identification card in the name of Shannon Rome Spence. Further, jail personnel reported that when Christopher Spence was being processed at the jail, Spence stated that he was not Shannon Spence, but was Christopher Jay Spence, In January of 2003, Christine Spence, wife of Rome P. Spence, the biological father of Shannon and Christopher Spence, positively identified the photograph on the passport application dated July 20, 2000, as Christopher Spence, and the photograph on the passport application dated January 22, 2002, as Shannon Rome Spence.

On December 14, 2004, State Department special agents learned that Christopher Spence had

been released from state custody and was on probation in Farmville, Virginia. On December 14, 2004, agents made arrangements to arrest Christopher Spence on December 17, 2004 at the office of state probation officer Marry Farrish. On December 17, 2004, Christopher Jay Spence, after being advised of his rights, and waiving his rights, provided a written statement admitting that he used his brother's name, Social Security card and birth certificate in his application for a U.S. Passport. Although agents obtained consent to search Christopher Spence's home on December 17, 2004, the false passport has never been recovered.

**PROPOSED FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Count One of the Indictment and adjudge him guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after

that report has been submitted to the Court. A sentencing hearing hereby is scheduled for August 2, 2005 at 9:45 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

4-26-05
Date